# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**77**

**CA 12-01322**

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, SCONIERS, AND VALENTINO, JJ.

---

CLAUDETTE V. SAUTER, PLAINTIFF-RESPONDENT,

V                                                    MEMORANDUM AND ORDER

PETER A. CALABRETTA, DEFENDANT-APPELLANT.

---

MACKENZIE HUGHES LLP, SYRACUSE (SAMANTHA MILLER OF COUNSEL), FOR DEFENDANT-APPELLANT.

STANLEY LAW OFFICES, LLP, SYRACUSE (JOHN COOPER OF COUNSEL), FOR PLAINTIFF-RESPONDENT.

---

Appeal from an order of the Supreme Court, Onondaga County (James P. Murphy, J.), entered March 22, 2012 in a personal injury action. The order, inter alia, granted plaintiff's motion to set aside the jury verdict.

It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is denied, and the verdict is reinstated.

Memorandum: In this negligence action, plaintiff seeks damages for injuries that she sustained when she was struck by a vehicle operated by defendant while she was walking on the right side of a road. The jury returned a verdict in defendant's favor, but Supreme Court thereafter granted plaintiff's motion to set aside the verdict as against the weight of the evidence and directed that a new trial be conducted (*see* CPLR 4404 [a]). Defendant appeals. We reverse and reinstate the verdict.

"A verdict rendered in favor of a defendant may be successfully challenged as against the weight of the evidence only when the evidence so preponderated in favor of the plaintiff that it could not have been reached on any fair interpretation of the evidence" (*Krieger v McDonald's Rest. of N.Y., Inc.*, 79 AD3d 1827, 1828, *lv dismissed* 17 NY3d 734 [internal quotation marks omitted]; *see Lolik v Big V Supermarkets*, 86 NY2d 744, 746; *Parr v Mongarella*, 77 AD3d 1429, 1429). Although "[t]hat determination is addressed to the sound discretion of the trial court, . . . if the verdict is one that reasonable persons could have rendered after receiving conflicting evidence, the court should not substitute its judgment for that of the jury" (*Ruddock v Happell*, 307 AD2d 719, 720; *see Harris v Armstrong*, 97 AD2d 947, 947, *affd* 64 NY2d 700; *Todd v PLSIII, LLC-We Care*, 87 AD3d 1376, 1377; *Parr*, 77 AD3d at 1429-1430). Further, it "is within

the province of the jury to determine issues of credibility, and great deference is accorded to the jury given its opportunity to see and hear the witnesses" (*Seong Yim Kim v New York City Tr. Auth.*, 87 AD3d 531, 532 [internal quotation marks omitted]).

It is undisputed that the accident at issue occurred at approximately 11:00 p.m. in a dark area with only minimal artificial lighting. Defendant testified that he was driving at the speed limit of 40 miles per hour in the right lane of the subject road when he saw "a big blur of . . . dark red or something" about 10 feet in front of him on the right. According to defendant, the blur was to the left of the fog line. The impact occurred one to two seconds after defendant perceived the blur in his peripheral vision, and he testified that he "had no time to react." Defendant's passenger-side mirror struck plaintiff in the back and threw her "to the right a little bit and a distance" from the point of impact. Plaintiff landed face-first in a puddle, slightly to the right of a drainage gutter that ran along the shoulder of the road. The "far right" portion of the vehicle's windshield and its passenger-side mirror were damaged by the impact.

It is further undisputed that conditions at the time of the accident would have substantially reduced defendant's ability to perceive and react to plaintiff and the friend with whom she was walking at that time. Plaintiff and her friend were walking shoulder-to-shoulder on the right side of the road with their backs to traffic; plaintiff, who was walking closest to the road, was wearing a dark red hooded sweatshirt and blue jeans, and she did not recall whether her hood was up or down; neither plaintiff nor her friend was wearing reflective clothing, and they were not carrying flashlights; the investigating officer testified that the north side of the subject road has a "very narrow" shoulder, and, according to plaintiff's friend, the fog line separating the shoulder from the roadway was so "faded" that she could "[b]arely" see it; the shoulder was also bisected by the drainage gutter that at the time of the accident contained an accumulation of water from an earlier rainfall, requiring plaintiff and her friend to walk around the resulting puddles; plaintiff's grandmother testified that "you can't see very well" at night on the subject road; and, although plaintiff's friend insisted that they "never" crossed the fog line, she also testified that she "wasn't paying attention to [the fog line]," that she did not see plaintiff's feet at the time of the accident, and that she never saw the wheels of defendant's vehicle cross the fog line.

Although by granting the posttrial motion the court agreed with plaintiff that defendant was negligent in failing to see what was there to be seen, we nevertheless agree with defendant that reasonable persons could have found that he was not negligent given the foregoing trial evidence (*see Todd*, 87 AD3d at 1376-1378; *Seong Yim Kim*, 87 AD3d at 532-533; *Parr*, 77 AD3d at 1430). The court therefore erred in setting aside the jury's verdict (*see generally Nicastro v Park*, 113 AD2d 129, 135).

Entered:  February 8, 2013                          Frances E. Cafarell
                                                    Clerk of the Court