Revere v Burke (2024 NY Slip Op 03948)

Revere v Burke

2024 NY Slip Op 03948

Decided on July 26, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 26, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, MONTOUR, NOWAK, AND DELCONTE, JJ.

415 CA 23-01146

[*1]GRETCHEN REVERE AND KEVIN REVERE, PLAINTIFFS-RESPONDENTS,
v
ROBERT P. BURKE, D.O., ET AL., DEFENDANTS, STELLA M. CASTRO, M.D., AND ASTHMA & ALLERGY ASSOCIATES, P.C., DEFENDANTS-APPELLANTS. 

MARTIN, GANOTIS, BROWN, MOULD & CURRIE, P.C., DEWITT (C. TAYLOR PAYNE OF COUNSEL), FOR DEFENDANTS-APPELLANTS. 
ROBERT F. JULIAN, P.C., UTICA (ROBERT F. JULIAN OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS. 

 Appeal from an order of the Supreme Court, Oneida County (Bernadette T. Clark, J.), entered June 28, 2023. The order granted the motion of plaintiffs to set aside a verdict with respect to defendants Stella M. Castro, M.D., and Asthma & Allergy Associates, P.C., and ordered a new trial. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is denied, and the jury verdict is reinstated.
Memorandum: After Gretchen Revere (plaintiff) presented to her primary care physician (PCP) with numerous symptoms including the loss of taste and smell, the PCP referred plaintiff to allergist Stella M. Castro, M.D. of Asthma & Allergy Associates, P.C. (collectively, defendants). Following an initial evaluation during which Castro noted certain impressions about plaintiff's symptoms, Castro began plaintiff on a trial of nasal steroids and ordered skin allergen testing. Although plaintiff appeared three days later to complete the skin allergen testing, she failed to appear for a scheduled follow-up appointment to determine the effectiveness of the nasal steroids and did not thereafter return to Castro's practice. Castro was unaware that plaintiff failed to appear for her follow-up appointment—scheduled with a nurse practitioner at the practice—until years later, after plaintiffs commenced suit.
A benign brain tumor was later discovered in plaintiff's frontal lobe, and plaintiffs subsequently commenced this medical malpractice action seeking damages for injuries allegedly sustained by plaintiff as a result of defendants' failure to discover the tumor at an earlier time, among other claims. Plaintiffs specifically alleged, as relevant here, that defendants departed from the standard of care by failing to engage in appropriate follow up, planning, and treatment and by failing to communicate with other healthcare providers. Plaintiffs did not allege that Castro failed to supervise or monitor her staff; nor did they allege that Castro was otherwise negligent in failing to learn of the missed appointment. Following motion practice, the only remaining claims against Asthma & Allergy Associates, P.C. (practice) were vicarious liability claims based on Castro's conduct.
Following trial, the jury returned a verdict in favor of defendants. Plaintiffs moved pursuant to CPLR 4404 (a) to set aside the verdict with respect to defendants, and Supreme Court granted the motion and ordered a new trial on the ground that the jury could not have reached its verdict with respect to defendants on any fair interpretation of the evidence. The court reasoned that there was unanimity among the medical experts who testified at trial that Castro was required under the applicable standard of care to report to the PCP that plaintiff had failed to appear for her follow-up appointment and that Castro thus never completed her evaluation. [*2]Defendants now appeal, contending, among other things, that the verdict was supported by a fair interpretation of the evidence and that the court erred in granting plaintiffs' motion.
" 'It is well settled that a jury verdict will be set aside as against the weight of the evidence only when the evidence at trial so preponderated in favor of the movant that the verdict could not have been reached on any fair interpretation of the evidence' " (Monzon v Porter, 173 AD3d 1779, 1780 [4th Dept 2019]). While the resolution of a motion to set aside a verdict as against the weight of the evidence "is addressed to the sound discretion of the trial court, . . . if the verdict is one that reasonable persons could have rendered after receiving conflicting evidence, the court should not substitute its judgment for that of the jury" (Ruddock v Happell, 307 AD2d 719, 720 [4th Dept 2003]; see McMillian v Burden, 136 AD3d 1342, 1343 [4th Dept 2016]; Sauter v Calabretta, 103 AD3d 1220, 1220 [4th Dept 2013]). "[I]t is within the province of the jury to determine issues of credibility, and great deference is accorded to the jury given its opportunity to see and hear the witnesses" (2006905 Ontario Inc. v Goodrich Aerospace Can., Ltd., 222 AD3d 1436, 1438-1439 [4th Dept 2023] [internal quotation marks omitted]; see McMillian, 136 AD3d at 1343-1344; Sauter, 103 AD3d at 1220).
Here, we agree with defendants that the jury's verdict was supported by a fair interpretation of the evidence. There was ample evidence supporting the conclusion that Castro should have reported plaintiff's missed appointment to the PCP had she known about it. However, it is undisputed that Castro was not aware of plaintiff's failure to follow up with the practice until well after this lawsuit was commenced. Inasmuch as plaintiffs made no claim and submitted no evidence that Castro was negligent in failing to learn of the missed appointment or that the practice was negligent for failing to inform Castro of the no-show—or failing to themselves contact the PCP—the jury's verdict is supported by a fair interpretation of the evidence and the court erred in setting it aside.
Defendants' remaining contentions are academic in light of the foregoing.
Entered: July 26, 2024
Ann Dillon Flynn
Clerk of the Court